FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

ZACHARY R. E. RUSK,

2017 FEB 27  A 10: 30

**AMENDED COMPLAINT**

DISTRICT OF UTAH

Plaintiff/Petitioner,

DEPUTY CLERK 2:16-cv-00204

v.

District Judge: Honorable Robert Shelby

Magistrate Judge: Honorable Dustin Pead

COWBOY PROPERTIES, LLC

Defendant/Respondent.

**Introduction:**

On Friday February 24th 2016, the Court kindly adopted R&R and ordered Rusk to

submit an amended complaint. Prior to, on Wednesday, November 23rd, 2016, the Court ordered

Plaintiff to reply to it's order and ''provide a more definite statement as it pertains to additional

detail concerning the dates of his alleged protected conduct and Defendant's allegedly-

discriminatory actions''. Likewise, the Court ordered Plaintiff to ''number the paragraphs of his

complaint''. In addition, Plaintiff appreciates the courts understanding so far as stated in the

following: ''Plaintiff claims that on June 30, 2015, he applied to rent a subsidized apartment at

an apartment complex operated by Defendant. Plaintiff disclosed his alleged disability, Tourette

Syndrome, on the application for housing. Later, Defendant's apartment manager at the complex

told Plaintiff that he must submit evidence that his Unemployment Income would not be paid for

longer than 26 weeks. Plaintiff suggests two problems with this requirement. First, the form

letter Plaintiff received from the Department of Workforce Services (''DWS'') awarding benefits

indicated that payments lasted only 26 weeks. Second, Plaintiff claims that he and the manager

called DWS and a representative told Plaintiff and the manager that a second letter would not be provided, but the representative confirmed that Plaintiff would receive benefits for only 26 weeks… Next, Plaintiff alleges that Defendant retaliated against him after he filed a housing discrimination claim with the Denver Regional Office of the U.S. Department of Housing and Urban Development. Plaintiff alleges that after he filed the housing discrimination charge, a manager of another of Defendant's properties where Defendant resided, told Plaintiff he would not receive his packages because the delivery person required a signature. Plaintiff claims that when he contacted the delivery company, he was told that no signature was required for delivery."

**A) Discrimination:** *(Inclusive of specifics involving some evidence and a clearer chronological order of the statement of facts surrounding the claims to this case)*

1) On Sunday, July 27, 2014 4:56 PM Rusk wrote Liberty City Walk the following: Do you have a 1bed 1bath available in the next week or two? Thank you, Zach

2) On Jul 28, 2014, at 9:49 AM, Liberty CityWalk wrote Rusk the following: Prospect, Thank you for your interest in our community, attached is a copy of our pricing information sheet, brochure and waitlist request form. Unfortunately at this time we do not currently have availability but if you are interested in being added to our waiting list please complete and return our waitlist form at your earliest convenience. We will contact you as soon as vacancies become available. Please bear in mind that we are an income restricted property, to qualify your income must not exceed a certain amount and your household must not be comprised of all full-time students. For any other questions feel free to visit our website

Liberty CityWalk for more pricing information and floor plan layouts. **Due to our lengthy

waitlist, we cannot predict a definite time frame for availability.** We look forward to

hearing from you and hope to work with you soon. Thank you,  Mandy Kaya Property

Manager Liberty CityWalk Apartments 210 S 300 E Salt Lake City, UT 84111 Tel:

801.869.6000 | Fax: 801.869.6001 libertycitywalk@cowboy.us | www.cowboy.us/

libertycitywalk <CityWalk Pricing Handout.pdf>

3) On July July 28, 2014 at 9:55:20 AM MDT Rusk replied with the following: Sure, keep me

posted for the next week or two if anything changes. Have a terrific day, zach | zrusk.org

zachrusk.com | Parkway Radio Interview: http://www.blogtalkradio.com/parkwayradio/

2011/06/24/parkway-radio-interviews-pianist-zach- rusk | Park Record Article:

www.parkrecord.com/ci_14521153 (also includes ADA conditions such as Turret Syndrome)

4) On July 2nd 2015, an email was received by Liberty Gateway and Liberty CityWalk at or

around 11:03am MT inclusive of the following along with an attachment of evidence: On Jul

1, 2015, at 10:08 AM, BARBARA RUSDEN <BARBARA.RUSDEN@EEOC.GOV> wrote:

Hi Zach, Yes, please hold on to this information for possible future use. Barbara Barbara

Rusden Investigator U.S. Equal Employment Opportunity Commission 3300 N. Central

Avenue Suite 690 Phoenix, AZ 85012 (602) 640-5054 (phone) (602) 640-5071 (fax)

5) On January 19th 2016 a complaint for discriminatory refusal to rent based on disability from

Liberty CitiWalk Apartments at 210 S 300 E SLC UT 84111 was received and time stamped

by HUD FHEO out of Denver, CO. The respondents on the complaint filed and received by

HUD included Liberty CitiWalk, Cowboy Properties; and Jenifer Ewoniuk, VP and COO of

Cowboy Properties. The complaint also notes that in July 2015, complainant applied and

qualified for a one-bedroom unit at the subject property. Complainant identified himself as a person with a disability on his application and respondent Cowboy Properties required additional paperwork from the State of Utah (see Rusk v. State of Utah) verifying his unemployment income, and requested documents that did not exit, but insisted that these documents were necessary to obtain housing. Respondent Ewoniuk required these documents and calculated his income incorrectly as pretext to disqualify him from the subject property because of his disability. Furthermore, Respondent Ewoniuk reiterated the need for the unobtainable paperwork and provided no other options; subsequently denying him housing at the subject property. Respondents discriminated against him by refusing to rent to him based on disability. The acts alleged in this complaint, constitute a violation of the following section: Section 84(f)(1)(A) of the Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988.

6) The Court appears to request clarification as to ''whether Defendant then refused to accept Plaintiff's application, or simply denied it''. In clarification, Cowboy Properties' Liberty CitiWalk Manager not only can be seen to have processed the application but also accepted payment for the application filing fee, which constitutes a transaction. If there was not a fee to engage in business, there may be no return for the business, nor may there be nearly as much risk, if any, but Cowboy charged a fee for this service of filing an application, which creates a transaction and valid contract, that further requires the establishment of a fiduciary duty to act prudently (and lawfully) in administering the processes and overseeing of all persons and processes involved by the leadership - which can also be tied in the case all the way up to the senior officials of the company itself (see below). Note that a transaction is the action of

conducting business. A transaction is an exchange or interaction between people. Liberty

CitiWalk's manager originally attempted to decline acceptance of the check for the

application fee, but when Rusk insisted, she accepted the the cashiers check as Rusk further

highlighted and noted that she must do so because Rusk had in fact applied and they denied

his application and that there need be documentation thereof such occurrence in the event any

questions arise later, while Rusk understands that this creates a transaction and/or a valid

enforceable contract from his Business Law Class studies — Rusk knows this because he

was requested to present to his class on contracts in writing at the University of Rochester

Simon Graduate School of Business in NY by Cornell Professor Paul Shanahan — and while

Rusk had already received a cashiers check as directed by the Liberty CityWalk Manager, one

for the 25$ application fee and one for 299$ as to the deposit. See Exhibit B, page II, for a

copy of the following: Rusk's Wells Fargo Cashiers check was written for (25$) twenty-five-

dollars and made out to Liberty Citywalk on June 30, 2015. It was cashed on July 9th 2015.

WF check number 0352002177. Payee memo on the check denotes 'application fee'. WF

account number it was written from was 4861512879. The remitter and purchaser was

Zachary R. E. Rusk from his personal WF checking account number 30336133712. Operator

I.D. U360857. Office AU# 0003520. 381 E Broadway, Salt Lake City, Utah 84111.


**B) Retaliation:** *(Inclusive of specifics involving some evidence and a clearer chronological*
*order of the statement of facts surrounding the claims to this case)*

1) In and dated for around January 2015, Rusk received a letter from Liberty Gateway with

   Stephanie Larson's signature line as the manager of Liberty Gateway, stating: Liberty

Gateway staff members are no longer able to accept packages from any delivery services that require a signature unless a release form is signed. The form also included a disclosure noting that: ''Your signature on the bottom portion of this form releases Liberty Gateway from all liability for accepting or storing packages.''

2) Dated for January 26th 2016, Rusk received a USPS noted as evidenced on the record as well, indicated it was from 'housing', directing Rusk to go to the USPS office to pick up a large envelope mailed via certified mail with a tracking number of 70062150000545608311. Interestingly, the contents of this mailing related specifically to the HUD Charges and the ADA Discrimination/Retaliation from Liberty CityWalk/LibertyGateway.

3) On February 17, 2016 at 11:54:29 AM MST Rusk wrote to Liberty Gateway and CC'd Jenifer Ewoniuk: Steph, your form also says that you release all liability if i sign it. That's why that's not acceptable or appropriate for me to sign especially with the perfected charges we currently have.

4) On February 17, 2016 at 11:47:57 AM MST Rusk wrote to Liberty Gateway and CC'd Jenifer Ewoniuk: Thanks for speaking on conference line with UPS and I, Amanda. Tried calling earlier but no answer. They are still saying it doesn't require signature. I found it interesting with the events yesterday as well as that Steph CC'd Jenifer. I have asked them to send me documentation showing this, like the others delivered from Amazon yesterday, does not require signature. Is there anything else you'd like to tell me?

5) On February 17, 2016 at 11:35:57 AM MST Rusk wrote to Liberty Gateway and CC'd Jenifer Ewoniuk: Steph, Please see attached. This is concerning. I'm on the phone with UPS and they say it is not a signature required package just like those yesterday. Please go ahead and

explain why you sent me the below. This makes our situation far more complex now with this

all as they are saying on this call (i have call recorders and these calls can also be supena'd).

Zach

6) On Feb 17, 2016, at 11:35 AM, Liberty Gateway wrote to Rusk:  Maybe it is a

misunderstanding, the UPS driver definitely told me that it required a signature and he could

not leave it in the office without one.

7) On Feb 17, 2016, at 11:25 AM, Liberty Gateway wrote to Rusk: Zach,  The UPS driver was

here today and said your package required a signature and he couldn't leave it with us. I can't

sign for any packages unless I have the package release form signed and in your file. I would

be happy to sign for all of your packages if can bring back the signed package release form.

Thank you.  Stephanie Larsen | Property Manager Liberty Gateway Cowboy Properties 50

South 500 West Salt Lake City, Utah 84101 Direct Dial 801.530.5000 | Fax 801.530.5001

libertygateway@cowboyproperties.com| www.cowboyproperties.com

8) On Wednesday, February 17, 2016 11:07 AM Liberty Gateway writ to Rusk: Hello,  Was

informed there was a packaged attempted to be delivered by UPS today around 10:36pm and

did see the UPS vehicle outside the leasing office when walked in around that time. They said

the delivery individual could not get in due to access. This is the same company that delivered

yesterday, and does not require a signature like yesterdays, since it would be identical value if

not less than those of yesterdays. Was something delivered for me?

9) On February 17, 2016 at 11:07:16 AM MST Rusk wrote to Liberty Gateway about witnesses

from phone calls presenting conflicting stories in addition to the following: ''*am not pm of

course'', as well as that Rusk had spoken with ''Ian, a Supervisor at UPS, who indicated his

employee ID number is PZB1EIR, at 1209PM MST as well as a third call with UPS

employee noted by ID PZB1PXA - named Clod".

10) Rusk also supplied Liberty Gateway via email around this time with the following: From:

order-update@amazon.com Date: February 17, 2016 at 12:04:36 PM MST To:

zach.rusk@gmail.com Subject: Your Amazon.com order has been attempted for delivery

Hello Zach, We're writing about the order(s). Shipment Tracking UPS let us know that they

are unable to get access to your front door to deliver the package. This sometimes occurs

when carriers do not have an access code for a gated community or secure building. Please

contact us to make delivery arrangements for your order or to arrange a pickup. Zach Rusk

50 S 500 W APT 402 SALT LAKE CITY, UT 84101-1299 United States From: order-

update@amazon.com Date: February 17, 2016 at 12:04:36 PM MST To:

zach.rusk@gmail.com Subject: Your Amazon.com order has been attempted for delivery

Hello Zach, We're writing about the order(s) Shipment Tracking UPS let us know that they

are unable to get access to your front door to deliver the package. This sometimes occurs

when carriers do not have an access code for a gated community or secure building. Please

contact us to make delivery arrangements for your order or to arrange a pickup. Zach Rusk 50

S 500 W APT 402 SALT LAKE CITY, UT 84101-1299 United States

11) On Friday, February 19, 2016 12:50 PM, Rusk wrote the following Liberty Gateway with the

subject line of "Missed Call, w/no VM": Hi Steph Amanda, Received a missed call from

your office. How can I help? Zach

12) On Feb 19, 2016, at 1:54 PM Liberty Gateway wrote: The UPS guy was here and said he had a package that needs a signature, I was calling to see if you were home. The UPS guy said he would try to deliver it again later.

13) On Friday, February 19, 2016 1:56 PM Rusk replied: What package/supplier? I'm not expecting any packages that require signature. But thank you! On Feb 19, 2016, at 1:56 PM, Liberty Gateway <libertygateway@cowboyproperties.com> wrote: UPS. On Feb 19, 2016, at 1:58 PM, Rusk wrote: Supplier, not deliverer (like those packages that say Amazon in the side that do not require signature). Thank you!

14) On Feb 20, 2016, at 3:14 PM, Rusk wrote to Liberty Gateway: Steph/Amanda, this was another amazon package and this one UPS and Amazon also confirm does not require signature once again. Be advised that this can be seek as continued and expanded discriminatory behaviors and actions for which once again are unlawful. I will be providing this and supplemental documentation to the court system shortly. ZR

15) On Feb 20, 2016, at 3:27 PM, Rusk wrote to Liberty Gateway: UPS is saying on the phone call right now that the statement they have documented from the deliveryman states that your office requires a form be filled out to accept packages, albeit these packages are not requiring signature according to UPS and Amazon and your form is only required if they require signature... Legal department for UPS Supena for information of this documentation: Service of Process Coordinator UPS Corp Legal Dept 55 Glenlake Parkway North East Atlanta, GA 30328

16) On Feb 20, 2016, at 3:32 PM Rusk wrote: I already knew this from attorneys, but Steph told mw that she could be sued in her personal capacity a bit ago. So yes, I plan to be suing Steph,

Amanda, Jenifer. etc., in both their official and personal capacities. And btw, this package was

a product to help my back pain/ADA disabilities. (and also supplied to Liberty Gateway

libertygateway@cowboyproperties.com and Jenifer Ewoniuk

jewoniuk@cowboyproperties.com)

17) On February 20, 2016 at 3:46:19 PM MST an email was supplied noting the following: Mail

Occurrence A: Shipping to SALT LAKE CITY, UT Carrier UPS Tracking #

1ZXF38300351705648 & Mail Occurrence B: Delivered to SALT LAKE CITY, UT Carrier

UPS Tracking # 1Z68122W0345508546 2040 w parkway blvd salt lake city utah 84119 for

pickup Monday (closed now according to UPS). M-F hours: 8am-7:30pm.

18) Close to Summer of 2016, Liberty Gateway raised their rent up to or around 1200$/month or

more on Rusk for his one bedroom one bath apartment at Liberty Gateway knowing Rusk

could not afford to pay that amount of money going forward (LG has received documentation

of this via email as well), especially with the former occurrences of discrimination for IRS

Section 42 housing at Liberty CityWalk.

19) Liberty Gateway/Liberty Citiwalk/Cowboy Properties counsel, namely, Kirk Cullimore (note

to exclude, Derek Barclay) of the Cullimore Law Group, filed for eviction against Rusk in or

around July of 2016. They obtained Summary Judgment in the Third District Court for non-

payment of rent and are claiming $8178.99+ in total damages against Rusk, where allegedly

$2597.50+ of which are to go to Liberty Gateway for rent between July 1st and August 2nd of

2016, and $4581+ that are to go to attorney fees. Minutes before the hearing, Rusk was

advised by Jared Allebest, a public defender in the Third District Court, to counter sue

Fidelity in the Rusk v. Cowboy Properties case for these damages, should I be ordered to pay

eventually, but to just agree for Mr. Allebest to tell the court that Rusk will accept a writ of execution in the mean time for that case of Liberty Gateway v. Rusk (the Honorable Judge - Heather Breraton, said in the second hearing, that she ''is overseeing the case for a writ of execution and not for discrimination leading to eviction'', so ''she cannot accept counter claims so as they pertain to discrimination in that court at that time…''). Mr. Allbest noted to Rusk that he would like to help Rusk and is impressed with Rusk's work on these cases for which Rusk showed and emailed Mr. Allbest upon Mr. Allbest request, noting his email on his business card for which Mr. Allbest gave Rusk. in the court room before the hearing, Mr Allbest then said he is going to enter a meeting with Mr. Cullimore for which he said Rusk apparently could not attend, and that Mr. Cullimore told [Mr. Allbest] not to help Rusk.  Rusk noted this in the hearing as well as the allegation that Cullimore extorted the public defender.

20) Mr. Cullimore wrote Rusk on May 17, 2016 2:36:40 PM requesting that Rusk email his pleadings, etc., to his email and their firm at kirk@cullimore.net and litigation@cullimore.net.

21) On Jul 25, 2016, at 10:23 AM, Mr. Cullimore wrote: So I take it you will NOT accept service of the Summons and Complaint on the eviction matter. Kirk A. Cullimore

22) On Monday, July 25, 2016 11:01 AM Rusk wrote to Mr. Cullimore: You need to serve me through the normal means.

23) On Jul 25, 2016, at 11:08 AM, Mr. Cullimore wrote: Liberty Gateway does not care about your Federal case. You expect that somehow you are entitled to be treated "better" because of some reason. You think that because of your disabilities that the rules do not apply to you. I am sure that you will "feel" that this judge is somehow being unfair to you as well. I am sure

a judicial complaint will follow, as is your method of operation. Good luck. You can still

change your mind and accept service but I have already commenced the process to serve your

alternatively.

24) On Mon, Jul 25, 2016 at 12:22 PM Rusk wrote to Mr. Cullimore: I expect to be treated

"lawfully".

25) On: Friday, July 29, 2016 10:24 AM Rusk wrote to Me. Cullimore and his firms Litigation

email, CC-ing Liberty Gateway and Jennifer Ewoniuk: Mr Cullimore: For the record and with

respect to my conditions and resources available at this time, note that I have moved out as

much as I can reasonably and practically move out of the apt I rented from Liberty Gateway

for almost two years now. I am turning in my keys and key fab now as well. Note that I have

also taken videos and picture in the event that they become necessary to utilize. Apt 402,

parking stall 23, mailbox 90. Zach Rusk 801.244.7798 zach.rusk@gmail.com

26) On or around July 29th, Rusk did in fact turn in his keys and key fab to the assistant manager

of Liberty Gateway — ''Ima P.'' — who provided Rusk written documentation with his

signature on Liberty Gateway letterhead, inclusive of the facts that Rusk ''turned his keys and

key fab'' into him.

27) On Jul 29, 2016, at 8:31 AM, Kirk Cullimore wrote rusk: Please note that unless you are

specifically stating that you are abandoning the property remaining in the premises, the unit

will not be deemed vacated until such time as all property is removed. Consequently, the

hearing set for next Tuesday will continue. Liberty Gateway will not "turn" the unit nor deem

the unit returned and vacated until such time as all items are removed or a court order allows

possession to be returned. Kirk A. Cullimore

28) On Jul 29, 2016, at 8:41 AM, Kirk Cullimore wrote Rusk: It is necessary that you specifically remove all of your items or that you abandon such items. Again, without a court order to remove you or a specific statement in writing that you have abandoned all the remaining items, Liberty Gateway will not retake possession. A hearing has been set for the Court to determine occupancy issues. Kirk A. Cullimore

29) On Friday, July 29, 2016 10:46 AM Rusk wrote Kirk Cullimore and cc'd Cullimore Litigation as directed from Mr. Cullimore: Fair enough. Accordingly — I, Zachary Rusk, hereby abandon all items remaining on premises on this 29th day of July 2016. Ok, so what next? ZR

30) On July 29, 2016 7:50:48 AM Mr. Cullimore wrote Rusk: I appreciate that statement. At this point in time… we feel it necessary to obtain the Court order of eviction. Kirk A. Cullimore

31) On August 05, 2016 at 10:56 AM Mr. Cullimore wrote Rusk stating that he does not know who Wasatch Properties is.

32) On or around October 24th 2016, Rusk filed an address change with the Courts to 771 West Serra Way #302  South Jordan Utah 84095 wherefore Juan Mares (and LGBT person and Person of Color) resides and of whom notes that Wasatch properties owns the San Marino Apartments. Interestingly, on the same day noted above, Juan Mares was served with a Three Day Notice to Comply or Vacate, tellingly, from the Law Office Of Kirk Cullimore. Duly note that Mr Mares attended Rusk's hearing as a good freind and witness for Rusk, while Mr. Cullimore clearly already represented Cowboy Properties/Liberty Gateway in the Third District Court, as well as Cowboy Properties in the Rusk v. Cowboy Properties in U.S. District Court for the District of Utah filed far earlier.

33) If needed, it shall be noted that there is reason to believe that individuals such as, but not limited to, people such as Colton Chase Christensen, who identify as LGBT, having an LDS history and not possessing ADA conditions like Rusk's, as examples to isolate these occurrences to be ADA discrimination specifically, as Cowboy Properties has in fact rented to people such as that/them but not Rusk when Rusk was qualified. Furthermore, duly note that Mr. Christensen can be shown to evaded taxes to qualify for the low income housing provided by Cowboy Properties for which Rusk applied for. Christensen noted to Rusk in writing, that he would have to file for bankrupsy if anyone was to report that to the IRS.

34) **Injury:** There are not only well over 10k in capital damages from the rent disparity itself, around 200$ Rusk could have had at LC vs the around 1200 Rusk had been required to pay at LG, in terms of the refusal to rent from Liberty CitiWalk's discrimination, but there is now also well over, at least, hundreds of thousands of dollars in capital damages (in terms of what kind of capital is needed to buy a house or apartment, at a reasonable market rate - in Utah this is now around $250k.., as opposed to renting) due to the fact of Rusk now not being able to rent again in the next 3-5 years, if not forever, due to how difficult it is to overcome an eviction, etc., especially given all that Cowboy Properties and it's liabilities were clearly aware of at the times they were and continue to be - for which they can also be seen to have engaged in colluding, tortuous interference, etc., in addition, whereas Civil RICO Charges can be seen as appropriate eventually, yet premature at this time (with respect what Judge Harris said before ruling on the motion to dismiss in the case of Rusk v. UoU Healthcare as it pertains to medical malpractice and gross negligence, as well as tortuous interference claims involving discrimination and (specifically FMLA/prima-facie) retaliation). Therefore, there is

reason to believe it would only be appropriate and practical, as well as equitable for Rusk to receive around 300k for each occurrence or at bare minimum in just capital damages themselves. It would certainly appear even more appropriate for Rusk to request a ''jury demand'' instead of bench trail so that Rusk would be able to obtain additional significant relief in the form of awarding punitive damages through any jury verdict, given the significant emotional distress and effects on Rusk's ADA conditions. For one example, Rusk was recently told by a health professional at Cache Valley Health Clinic, namely, Natalie Gibson, DNP, on or around November 16th 2016, that Rusk now has a heart murmur. Heart Murmers can lead to death in a matter of just a few years, if not less. Rusk has not been told this before, around a year or so ago, in 2015, when getting tests dont such as EKG's, EEG's, among others, including ultrasounds, chest x-rays, etc., given other conditions and needs. Some of this can be seen as attributable specifically to the anxiety and stress around correcting the defamation in and of itself, not to exclude the discriminatory and retaliatory events that occurred, as to what transpired with the defendants, including and especially that of Cowboy Properties (parent company) inclusive of Liberty CitiWalk and Liberty Gateway. If LC and LG claim that Cullimore Law Group may be responsible for some of the latter events, advised incorrectly, and/or have engaged in attorney malpractice as a claim of theirs in and of itself, that is not Rusk's problem and not a valid argument to deter damages that can be assigned to Cowboy Properties. If Rusk is award damages for any of the latter deemed as such, it would be up to LC/LB/Cowboy-Properties to sue Cullimore Law Group for malpractice should it see fit. A plaintiff can obtain damages up to 10% of companies net

worth, and often recent jury verdicts have even yielded more. Th request for relief in case, can be seen as well under 10% of Cowboy's net worth.

**Section C: As the court appears to order along with numbered paragraphs, the following section is, in large part, copied and re-alledged from the original reply on or around October 11th 2016:**

1) Between 2012-2015, Rusk was allegedly unlawfully discriminated and retaliated against by his employer (see Rusk v. FBS). Rusk was terminated and allegedly defamed by his employer in April of 2015. In, around and/or before July of 2015, Liberty Gateway management, including Stephanie Larsen, Liberty Gateway Property manager, had obtained knowledge and evidence of the afore-noted. For one example, an email dated July 1st 2015 indicates Liberty Gateway and Liberty CityWalk had been in receipt of evidence regarding charges against FBS from an EEOC Federal Investigator entitled ''540-2015-01960 Rusk v. Fidelity Brokerage Services'', Rusk first inquired, via email, to Cowboy's Liberty Citi Walk IRS Section 42 Tax Credit Housing Property (unlike Liberty Gateway who is not an IRS Section 42 Provider) on July 27th 2014. Mandy Kaya, Property Manager for Liberty Citi Walk replied via email to Rusk on July 28th requesting more information from Rusk and then stating that Rusk was put on a waitlist. On June 30th 2015, Rusk filled out an application for Liberty Citi Walk. The application noted the rental agreement's rate of just over $300/month. Rusk had been paying Liberty Gateway their required around $1200/month, for the only one bedroom apartment they made available to Rusk (Rusk resided at Liberty Gateway since on or around

September 1st of 2014, almost two years and was noted to via email by management to have been a very good resident).

2) On or around June 30th 2015, Liberty Citi Walk required Rusk to provide unreasonable and overly onerous documentation from (the State of Utah Department of Workforce Services — ''DWS'' — claiming sovereign immunity under the 11th amendment against any claims of 'monetary damages' and non-injuncuture or declaratory relief sought in this one of many acts of which can be seen as corroboration/colluding among the many defendants' outstanding liabilities) impossible to provide because the [S]tate [of Utah] said again (not just on a call with Cowboy, on or around June 30th 2015, with Liberty Citi Walk's management and Rusk, but also) in their response to the appellate court — 10th Circuit in Denver CO (see Rusk v. State of Utah) on Friday October 9th, [again] claiming that they '…dont write customized letters…'. (that of which was really secondary and additional to what Rusk already provided Liberty Citi Walk, for which really can already be seen as rather reasonably sufficient (also said on the phone call from the DWS Reps) for the communicated and intended purposes of showing the appropriate and accurate income documentation — this document should also already be shown on the federal docket….) that showed Rusk received less than 20-21k/year in ''anticipated future income'' per what they claimed to be referencing in the 'HUD Handbook' (re: limit for 100% low income housing).

3) Rusk provided Liberty Citi Walk with this around one pager notice of claim and benefit amount of unemployment insurance showing clearly that the maximum amount of unemployment income that the State of Utah DWS would provide Rusk with, is less than 13k

(and thus certainly less than 21k) for the next twelve months. Rusk listed all other income, as well, which added up to far less than 21k of anticipated future income (including if and should he need to deplete any assets at the time, in addition) for the next twelve months.

4) Capital losses of far more than 10k from just denial of access to fair housing (in violation with the FHA) and IRS Section 42 Tax Credit Housing (Cowboy can be seen as being a monopoly provided of such), is just one damage Cowboy has caused Rusk, in response to Cowboy's need for how Rusk has been harmed by Cowboy. Further and most severe damages include that of not just compensatory, but certainly punitive damages, not limited to severe emotional distress and exacerbated physical pain from Rusk's not just neurological/ psychological conditions, but also Rusk's physical and rather newly / recently acquired physical disabilities/conditions, such as bulging disks (not to exclude a full thoracic spinal fusion), lack of access to medical remedies because Rusk could no longer afford them due the rent discrimination, such as restasis ($600/month without unaffordable insurance coverage) for chronic dry eye, which without recently finally having acquired access to such at least temporarily for now, though free health care clinics, could have caused Rusk to go blind (another 1k+ for SSDI could be granted just for this), not just his conditions overall to have severely worsened, further causing incapacitation and inability to go back to work and obtain any more income than Rusk could have obtained in working w/o discrimination, defamation, blacklisting/blackballing in callous retaliation and reprisal for engaging in protected activities vs. now having to be an SSDI recipient from a rather very young age (with only few quarters of accrual in terms of the amount of insurance benefit awarded…). Furthermore, now that Cowboy has received a writ of execution for eviction of Rusk, Rusk can no longer rent for at

least a period of 3-5 or more years. Rusk certainly does not receive enough income and certainly does not have enough assets to buy any residence otherwise, even at the lowest market rate.

5) To make for further callous unlawful conduct, as it pertains to Liberty Gateway this time, wherefore Rusk had been residing, the retaliation from Cowboy Properties here occurred after the time of applications and (unlawful discriminatory) denial to Liberty Citi Walk, which was also following when Rusk had HUD out of Denver serve Cowboy with a charge of discrimination on January 19th 2016 (since Utah DoL failed to uphold their duty of office in this as well....). The retaliation included Cowboy Properties Liberty Gateway Manager, Stephanie Larson. For example, written from her email address on February 19th 2016, to Rusk stated, ''The UPS guy was here and said he had a package that needs a signature, I was calling to see if you were home." Rusk responded, ''What package/supplier? I'm not expecting any packages that require signature." and later that day after double checking with suppliers Rusk emailed, "this was another amazon package and this one UPS and Amazon also confirm does not require signature once again...."

6) On Feb 17, 2016, at 11:25 AM, Liberty Gateway wrote: Zach, The UPS driver was here today and said your package required a signature and he couldn't leave it with us. I can't sign for any packages unless I have the package release form signed and in your file. I would be happy to sign for all of your packages if can bring back the signed package release form. Thank you. Stephanie Larsen | Property Manager Liberty Gateway Cowboy Properties 50 South 500 West Salt Lake City, Utah 84101 Direct Dial 801.530.5000 | Fax 801.530.5001

libertygateway@cowboyproperties.com| www.cowboyproperties.com Rusk called UPS at 11:54 AM 02/17/2016 — spoke with Ian - UPS Supervisor Employee ID PZB1EIR at 1209PM MST, who stated no signature was required yet again.

7) Duly note that around the same times above, Steph had communicated frustrations to people not to exclude Rusk that she was frustrated with dealing with packages. Steph, as she noted, had sent out a form asking that anyone receiving packages requiring a signature, signed that they release liability.

8) Cowboy then evicted Rusk on or around July 30th 2016, obtaining a writ of eviction from the Third District Court.

9) PRAYER FOR RELEIF: Wherefore, the Plaintiff requests that the court award him: (a) damages of $250,000 (for each occurrence; or the maximum allowable under the FHA); and (b) other damages and further relief as deemed just.

10) DECLARATION: I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

11) CERTIFICATE OF SERVICE: I hereby certify that a copy of the foregoing has been transmitted to the Defendant(s).

12). SIGNATURE: Respectfully submitted on this 24th day of February 2017.

/s/ Zachary R. E. Rusk

pro se litigant

1010 N 100 W

Newton, UT 84327

zach.rusk@gmail.com

801.244.7798